ORDERED.

**Dated: October 09, 2019**

/s/ Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 3:15-bk-1645-JAF |
| James K. Lindsey, | Chapter 13 |
|     Debtor. _____/ | |
| Duckworth Development II, LLC, | |
|     Plaintiff, | |
| vs. | Adv. Pro. No. 3:18-ap-43-JAF |
| James K. Lindsey, Debtor and Kracor South, Inc., a Florida corporation, | |
|     Defendants. _____/ | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court for trial on November 15, 2018, and July 17, 2019. In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective

positions.  Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

## Findings of Fact

On April 13, 2015, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code. On his schedule of assets, the Debtor listed a "fee simple" interest in real property located at 0 Whitlock Avenue, Jacksonville, Florida ("0 Whitlock") and a "fee simple" interest in real property located at 844 Whitlock Avenue, Jacksonville, Florida ("844 Whitlock") (together, the "Property").  According to the Debtor's schedule of liabilities, 844 Whitlock was subject to a first mortgage held by Ameris Bank, and both properties were subject to liens for property taxes held by the Duval County Tax Collector.

On February 16, 2017, Ameris Bank filed an action in state court to foreclose its mortgage on 844 Whitlock.  (Duckworth's Exhibit 24).  The Debtor and Kracor South, Inc. ("Kracor"), a corporation of which the Debtor was president and the majority shareholder, were named as defendants in the foreclosure action.

At about the same time the foreclosure action was filed, the Debtor began communicating with Mary Alice Lundy, a realtor, regarding the sale of the Property.  Ms. Lundy referred the Debtor to Eric Bumgarner ("Bumgarner"), a realtor specializing in industrial property, and Bumgarner introduced the Debtor to Hank Duckworth as a potential buyer.  (Transcript, pp. 42-43).  On April 4, 2017, the Debtor wrote an email to Bumgarner, stating: "I met with Hank and his attorney yesterday.  All looks good for the purchase of both parcels, net to me $475,000.  I need to get a contract asap where I can forward that to Ameris Bank which will postpone the foreclosure suit."  (Duckworth's Exhibit 44).

Based on his understanding that an agreement had been reached to sell the Property to Hank Duckworth, Bumgarner prepared a Commercial Contract for the sale of the Property. (Duckworth's Exhibit 33; Transcript, pp. 45-46). The Seller was identified in the Contract as "Kracor South, Inc. et al, a Florida Corporation." Bumgarner testified that he believed the description of the seller as "Kracor South, Inc. et al" encompassed both Kracor and the Debtor. (Transcript, pp. 46-47).[1] On the signature page, the Debtor printed his name and the name "Kracor-South" on one line and signed "Pres James K Lindsey" on the next line. The Buyer was identified in the Contract as Duckworth Development II, LLC, ("Duckworth Development"), and Hank Duckworth signed the Contract on April 6, 2017, as managing member of the Buyer. The Commercial Contract reflected Duckworth Development's "intended use of the Property as multi-tenant office/warehouse." The purchase price was $450,000.00.

On April 24, 2017, Duckworth Development's attorney emailed the Debtor a letter, which referred to the Commercial Contract and an enclosed Title Commitment. (Duckworth's Exhibit 52). The letter identified the collective Seller as Kracor and the Debtor and stated that "Seller must satisfy or cause to be satisfied all of the requirements set forth" in the Title Commitment prior to closing. The Title Commitment stated that title to the Property was vested in Kracor and the Debtor. Schedule B, Section I of the Title Commitment was entitled Requirements and stated that Warranty Deeds from both Kracor and the Debtor must be signed and delivered as a condition to the issuance of a title insurance policy.

On May 18, 2017, the parties signed an Amendment to the Commercial Contract that extended Duckworth Development's due diligence period to June 22, 2017. (Duckworth's Exhibit

---

[1] In fact, Mr. Bumgarner testified that none of the 315 transactions he has conducted involved a partial sale, and he has never heard of a partial sale.

3

43). The Seller was identified on the Amendment as "Kracor South, Inc. et al," and the Amendment was signed by "James K. Lindsey, President."

On June 13, 2017, an appraisal of the Property was completed at the request of Duckworth Development's lender. (Duckworth's Exhibit 46). According to the appraisal, the "as is" value of 0 Whitlock as of June 6, 2017 was $110,000.00, and the "as is" value of 844 Whitlock as of June 6, 2017 was $450,000.00.

On June 27, 2017, the Debtor filed a Motion to Sell Real Property in his Chapter 13 bankruptcy case. The Motion recites in part:

> The Debtor is the owner of multiple properties due to the nature of his business and has entered into a sales agreement to sell his property located at 844 Whitlock Avenue, Jacksonville, FL 32211 (hereinafter "the property").
>
> The Debtor believes the sales proceeds are sufficient to payoff all mortgages and liens on this property as well as the balance of the Chapter 13 plan estimated at $144,320.40.
>
> Debtor seeks authority to sell the property according to the terms contained in the [Commercial Contract] between the Debtor and Duckworth Development II, LLC executed on April 6, 2017.

(Duckworth's Exhibit 11). The Motion was filed pursuant to the Court's negative notice procedure, and no objections to the sale were filed or asserted. On July 25, 2017, the Court entered an Order Granting the Motion to Sell Real Property. The Order stated: "Debtor has the authority to sell the property located at 844 Whitlock Avenue, Jacksonville, FL 32211 according to the terms contained in the [Commercial Contract] executed on April 6, 2017." (Duckworth's Ex. 12).

The closing of the sale occurred on July 7, 2017. On that date, the Debtor signed a Warranty Deed as president of Kracor, the Grantor, transferring Kracor's interest in the property to Duckworth Development. (Duckworth's Exhibit 47). The Debtor also signed a Title Affidavit as president of Kracor which stated that Kracor was the record owner of the property and that no parties were in possession of the property other than Kracor. (Duckworth's Exhibit 1). The

Combined Closing Statement dated July 7, 2017 reflects that the purchase price for the Property was $450,000.00, that the Ameris mortgage and other liens on the Property were satisfied, and that Kracor received a check in the amount of $138,043.62 at the closing. (Duckworth's Exhibit 2).

No Warranty Deed was prepared or signed transferring the Debtor's individual interest in the Property to Duckworth Development. Duckworth Development's attorney testified that the preparation of the closing documents, which only listed Kracor as the seller, was a mistake by his firm:

> So in this case and similar transactions, the associate would work with the legal assistant. The software generates the closing documents. You provide the names of the parties, the amount, the property address, and it generates a batch of closing documents populated with that information.
>
> In this case, I believe that the associate and/or the legal assistant inserted Kracor South, because that's the name that appears on the Purchase and Sale Agreement, and generated all of the closing documents that have been pointed to in this case as listing only one party.

(Transcript, pp. 121-22). According to the attorney, the inputting of information into the software program was a human error that was not discovered and corrected.

After the closing, Duckworth Development invested approximately $500,000.00 into the Property for the construction of metal buildings on 844 Whitlock and for the pouring of slabs on 0 Whitlock. Additionally, Duckworth Development moved its business office to 844 Whitlock and has leased a portion of the Property to third parties. (Transcript, pp. 73, 75-76, 92).

On January 23, 2018, six months after the closing, MTI Title Insurance Agency, Inc. prepared a Property Information Report regarding 844 Whitlock. The Report shows the owners of 844 Whitlock as the Debtor and Duckworth Development. (Duckworth's Exhibit 31). On the same day, the Debtor called Hank Duckworth to inform him that Duckworth Development's attorney had made a mistake and that Duckworth Development could get its mortgage paid if Hank

5

Duckworth "played his cards right." (Duckworth's Exhibit 66; Transcript, pp. 86, 242). Until that day, Hank Duckworth and the Debtor had not spoken since the closing.

Two weeks later, on February 7, 2018, the Debtor wrote Hank Duckworth a letter stating:

I am writing this email as 50% owner of the property located at 844 Whitlock Avenue, Jacksonville, FL 32211 (the "Property"). Based on the most recent city records Duckworth Development II, LLC ("Duckworth") is the other listed 50% owner, and I am presuming you are Duckworth's managing member as well as a major owner.

I did not approve any of the construction permits, cost estimates for materials, or sub-contractor work for the Property. Therefore, I am requesting all current and future construction work be immediately halted until an agreement between me and Duckworth is finalized in writing and I approve all past work and any contemplated future construction.

As 50% owner of the Property, I hereby demand 50% of all rental income be paid me starting from the effective date of Duckworth's purchase of Kracor's 50% interest in the Property plus supporting rental documents.

If you/Duckworth wish to try to resolve this situation now and avoid legal expenses (including payment for my legal costs), please contact me by mail or email . . . in the next two days.

(Duckworth's Exhibit 28).

Hank Duckworth testified that he and the Debtor never discussed any joint venture or partnership concerning the Property's business or any co-management by the Debtor after the sale. (Transcript, pp. 81, 238-39). Additionally, Duckworth Development's attorney testified that the Debtor never discussed his retention of any interest in the Property after the sale and that he would not have recommended such a joint venture. (Transcript, p. 139). The Debtor, on the other hand, testified that he did not intend to sell his interest in the Property. (Transcript, p. 183).

After receiving the Debtor's letter, Duckworth Development's attorney prepared a Corrective Warranty Deed reflecting both the Debtor and Kracor as the grantors of the Property,

6

but the Debtor has declined to sign the corrective deed.  (Duckworth's Exhibit 54; Transcript, p. 135).

On April 11, 2018, Duckworth Development filed the Complaint that commenced this adversary proceeding.  The Complaint contains two Counts.  Count I is an action for reformation of the Warranty Deed to provide that the Debtor and Kracor "transferred one-hundred percent of the fee simple interest in the Real Property" to Duckworth Development as of the date of the closing.  Count II is an action to quiet title to determine that the Debtor and Kracor have no further interest in the Property.

## Conclusions of Law

### I.     Reformation

If an agreement has been reached, but the effectuating instrument does not express the parties' true intent, a court of equity may reform the written instrument to conform to the agreement.  In re Shults, 2013 WL 4072509, at *6 (Bankr. M.D. Fla. Aug. 13, 2013) (citations omitted).  In reforming the instrument, the court does not alter the parties' agreement.  Id.  Instead, the reformation only corrects the instrument so that it accurately reflects the terms of the agreement that was actually reached.  Id.

In an action to reform an instrument under Florida law, the party seeking reformation must show that it fails to express the parties' agreement as a result of (1) a mutual mistake or (2) a unilateral mistake by one party combined with the inequitable conduct of the other party.  Barber v. America's Wholesale Lender, 542 F. App'x 832, 837 (11th Cir. 2013) (citing Romo v. Amedex Ins. Co., 930 So. 2d 643, 649 (Fla. 3d DCA 2006)).  A mistake is mutual when the parties agree to one thing and then, due to a scrivener's error or inadvertence, express something different in a written instrument.  Providence Square v. Biancardi, 507 So. 2d 1366, 1372 (Fla. 1987).

In this case, the evidence shows that the Debtor and Duckworth Development reached an agreement for Duckworth Development to purchase a fee simple interest in the Property, but the Warranty Deed transferring only Kracor's interest does not accurately express the agreement. The Warranty Deed failed to express the parties' true agreement because Duckworth Development's attorney made a mistake in the preparation of the sale documents. As a result, reformation of the Warranty Deed is the appropriate remedy.

**A. The Debtor and Duckworth Development entered into an agreement for Duckworth Development to purchase a fee simple interest in the Property.**

Prior to July 7, 2017, the Property was co-owned by the Debtor and Kracor. The Debtor asserts that he never intended to sell his interest in the Property to Duckworth Development either at the time that the Commercial Contract was entered into or at the time that the sale closed. (Transcript, pp. 183, 192-93). But the evidence shows that the parties intended for Duckworth to purchase a fee simple interest in the Property on July 7, 2017.

First, the Commercial Contract describes the property to be sold as "844 Whitlock Ave, Jacksonville, FL 32211(RE # 136303-0010) 0 Whitlock Ave, Jacksonville, FL 32211 (a vacant parcel RE# 136471-0000)." And paragraph 6 of the Commercial Contract provides that "Seller has the legal capacity to and will convey marketable title to the Property by statutory warranty deed." The Contract does not describe the Property subject to the sale as a partial interest.

Second, the purchase price for the Property was $450,000.00. The appraised value of 844 Whitlock was $450,000.00, and the appraised value of 0 Whitlock was $110,000.00. (Duckworth's Exhibit 46). Ameris Bank had commenced an action to foreclose on 844 Whitlock, and the Debtor had indicated that he needed to sell the Property as soon as possible to "postpone the foreclosure suit." (Duckworth's Exhibit 44). Accordingly, the purchase price of $450,000.00 was consistent with the appraised value of the Property in an expedited sale of the entire Property.

The purchase price of $450,000.00 was <u>not</u> consistent with an expedited sale of only Kracor's one-half interest in the Property, which would have had an appraised value of, at most, $280,000.00 ($450,000.00 plus $110,000.00 = $560,000.00/2 = $280,000.00).

Third, the Debtor filed a Motion to Sell Real Property in his bankruptcy case on June 27, 2017, approximately three weeks before the sale's closing. (Duckworth's Exhibit 11). In the Motion, the Debtor represented to the Court that he was the owner of multiple properties, that he intended to sell his property located at 844 Whitlock, that he was not aware of any interests in the property other than the liens held by Ameris Bank and the Duval County Tax Collector, and that the sale proceeds would be sufficient to satisfy the liens "as well as the balance of the Chapter 13 plan estimated at $144,320.40." In other words, the Debtor sought permission from the Court to sell his individual interest in 844 Whitlock and clearly contemplated receipt of the sale proceeds in his individual capacity for the purpose of funding his Chapter 13 plan.

Finally, the Property is business property, and a portion of the Property was leased to third-party tenants. In fact, the Commercial Contract signed on April 6, 2017 specifically reflects Duckworth Development's "intended use of the Property as multi-tenant office/warehouse." (Duckworth's Exhibit 33, ¶ 6). But Hank Duckworth testified that he and the Debtor never discussed any joint venture or partnership concerning the Property's business or any co-management by the Debtor after the sale. (Transcript, pp. 81, 238-39). Additionally, Duckworth Development's attorney testified that the Debtor never discussed his retention of any interest in the Property after the sale and that he would not have recommended such a joint venture. (Transcript, p. 139). Lastly, Duckworth Development invested approximately $500,000.00 to improve the Property after the sale, but the Debtor did not contribute any portion of the development costs or property taxes for the post-closing period. (Transcript, pp. 92-93, 239).

In summary, the evidence shows that the Debtor and Duckworth Development reached an agreement for the Debtor and Kracor to sell their combined one-hundred percent interest in the Property to Duckworth Development on July 7, 2017, with no retained interest by the Debtor. The Debtor's testimony to the contrary is simply not credible.

**B. Duckworth Development's attorney made a mistake in preparing the sale documents**

As stated above, in Florida an instrument may be reformed if it fails to express the parties' true agreement as a result of (1) a mutual mistake or (2) a unilateral mistake by one party combined with the inequitable conduct of the other party. Barber, 542 F. App'x at 837.

A complaining party may be barred from reforming a document, however, if the mistake was caused by that party's gross negligence. Goodall v. Whispering Woods Center, L.L.C., 990 So. 2d 695, 701 (Fla. 4th DCA 2008) (citing Continental Casualty Company v. City of Ocala, 149 So. 381 (1933)). Generally, the term gross negligence refers to actions taken with a conscious disregard of the likely harmful consequences to others, whereas simple negligence refers to actions taken with careless disregard of the consequences. Pleasant Valley Biofuels, LLC v. Sanchez-Medina, 2014 WL 11881016, at *3 (S.D. Fla. June 16, 2014); In re Palm Beach Finance Partners, L.P., 488 B.R. 758, 780 (Bankr. S.D. Fla. 2013). Whether the party seeking reformation has committed gross negligence is a factual question to be determined in light of the circumstances. Goodall v. Whispering Woods Center, 990 So. 2d at 701.

In In re United Tile & Stone, Inc., 449 Fed. App'x 901, 907 (11th Cir. 2011), for example, the court stated the general rule that a party's gross negligence will prevent it from obtaining reformation, but found that the bank seeking reformation in that case did not commit gross negligence when its vice president signed a subordination agreement without reading it or submitting it to counsel for review. The execution of the agreement was not grossly negligent

because the form of the subordination agreement had been discussed and revised earlier, the parties had agreed to a limited scope of the subordination, and a prior draft of the agreement had been reviewed as substantially correct. Id.

Here, Hank Duckworth acknowledges that Duckworth Development's attorney made a mistake in the preparation of the closing documents. The attorney testified that the mistake occurred when the law firm's staff drafted the Warranty Deed and related documents to name Kracor as the only grantor based on the name of the seller that appeared on the Commercial Contract. (Transcript, pp. 121-22).

But the evidence does not show that the mistake was the result of a conscious disregard of the consequences. Duckworth Development's attorney did not prepare the Commercial Contract, and the realtor who prepared it testified that he believed that its description of the seller as "Kracor South, Inc. et al" encompassed both Kracor and the Debtor. (Transcript, pp. 46-47). Duckworth Development's attorney conducted the normal pre-closing work by obtaining a Title Commitment, sending it to the Debtor with a cover letter noting the Debtor's obligations, preparing a Title Affidavit, and sending the parties an advance copy of the closing statement, among other pre-sale preparations. (Duckworth's Exhibits 1, 3, 41, 52). Finally, Duckworth Development's attorneys attempted to redress the situation promptly upon learning of the mistake by preparing a Corrective Warranty Deed and asking the Debtor to sign it. (Duckworth's Exhibit 54; Transcript, p. 135).

The omission of the Debtor as a seller on the closing documents clearly was a mistake by Duckworth Development's attorney. But under these circumstances, where the attorney had attempted to perform his due diligence research and exchanged the information with the Debtor, the Court cannot find that the mistake was the result of the attorney's gross negligence which would result in a bar to Duckworth Development's claim for reformation of the Warranty Deed.

**II.     Quiet title**

In order to state a claim for quiet title under Florida law, a plaintiff must establish "(1) the plaintiff's valid title, (2) the manner which the plaintiff obtained the title, (3) the basis upon which the defendant asserts an interest on the title, and (4) the invalidity of the defendant's interest in the property." Barrows v. Bank of Am., NA, 2014 WL 733742, *2 (M.D. Fla. Dec. 23, 2014). Duckworth Development has established the four elements to quiet title in its name. First, Duckworth Development has established its valid title through the Commercial Contract and the Warranty Deed from Kracor. Second, Duckworth Development obtained title to the Property by purchasing the Property from Lindsey and Kracor. Third, the Debtor's interest stems from Duckworth Development's attorney's mistake in preparing the closing documents. Finally, the Debtor's interest in the Property is invalid for the reasons set forth herein.

**Conclusion**

The Debtor and Duckworth Development reached an agreement for Duckworth Development to purchase a fee simple interest in certain property owned by the Debtor and Kracor South, Inc., a corporation of which the Debtor was president and the majority shareholder. However, because of a mistake by Duckworth's Development's attorney in the preparation of the sale documents, the Warranty Deed transferred only Kracor's interest in the property and does not express the parties' true intent and agreement. The Court will therefore reform the Warranty Deed to effectuate the transfer of the fee simple interest of the Property to Duckworth Development. The Plaintiff's attorney is directed to prepare a judgment consistent with these Findings of Fact and Conclusions of Law. The judgment shall contain a full legal description of the Property, along with assessment numbers for each parcel.